BANKERS UNION LIFE COMPANY OF DENVER, COLORADO, v. GEORGE H. SHEPPARD, COMPTROLLER OF THE STATE OF TEXAS, AND CHARLEY LOCKHART, TREASURER OF THE STATE OF TEXAS.

No. 7410. Decided June 15, 1938.
(117 S. W., 2d Series, 770.)

*W. A. Keeling,* of Austin, for relator.

*William McCraw,* Attorney General, and *Richard Brooks,* Assistant Attorney General, for respondents.

MR. JUSTICE SHARP delivered the opinion of the Court.

Relator, Bankers Union Life Company of Denver, Colorado, seeks a writ of mandamus against George H. Sheppard, Comptroller of the State of Texas and Charley Lockhart, Treasurer of the State of Texas, to require them to release to relator a deposit of $5,000 heretofore made by relator with the State Treasurer, as required by law, to transact certain business in the State of Texas.

As grounds for such mandamus, relator shows: (1) That as a corporation it entered the State of Texas in November, 1930, and complied with Title 21, Article 696 et seq., of the Revised Civil Statutes, by depositing in the State treasury legal bonds, which were duly approved and accepted by the State Treasurer, as the legal deposit which authorized relator to place or sell its bonds, certificates, and debentures; (2) that at this time it is not transacting, and for many years past it has not transacted, any business in this State, and that it has liquidated all of the bond transactions or investments which under Article 696 it was authorized to make in Texas, and that at this time it has no liabilities in this State, within the meaning of the law governing this deposit and the return thereof, provided for in Articles 696 to 700, inclusive; and (3) that the State Comptroller refused, and still refuses, to issue to relator his warrant to the State Treasurer for the return of the securities in the

amount of $5,000, which are on deposit as above stated, and that the State Treasurer refused, and still refuses, to return said securities to relator.

Respondents, on the other hand, contend that the $5,000 deposit should not be returned to relator, and allege the following ground for such refusal:

"Respondents are not authorized to issue said warrant and to return said securities in that Relator is not entitled to have Respondents so act until Relator shall have satisfied the Comptroller and Attorney General that it has no liabilities in this State. Said officers are satisfied that Relator has no liabilities in this State, except and unless as a matter of law, the ownership of shares of Relator's capital stock by residents of this State constitutes the having by Relator of liabilities in this State."

Relator and respondents have agreed to the following statement of facts:

"It is hereby stipulated and agreed that the Bankers Union Life Company of Denver, Colorado, qualified under Article 696 of the Revised Civil Statutes of the State of Texas as a company to place on sale bonds, certificates or debentures on the partial payment or installment plan, and deposited with the Treasurer of the State of Texas, securities, approved by the Treasurer of the State of Texas, in the sum of Five Thousand Dollars ($5,000.00), and that thereafter there were no net premiums received, and therefore none required to be deposited in the State Treasury in addition to the original deposit of Five thousand dollars. That the Bankers Union Life Company is not now and has not for a period of more than five years transacted any business in the State of Texas, and has paid off and discharged all of its liabilities to all parties to whom it sold its bonds, certificates and/or debentures on the partial payment or installment plan in the State of Texas, and that there is now no indebtedness of any kind or character due by the Bankers Union Life Company to any holder of its bonds, certificates and/or debentures in the State of Texas.

"It is further hereby stipulated and agreed that there are now owned and held by residents of the State of Texas various shares of the capital stock of Relator, Bankers Union Life Company of Denver, Colorado."

This suit involves the construction of Articles 696 to 700, inclusive, of the Revised Civil Statutes of Texas, relating to the

deposit required of bond investment companies doing business in Texas.

Article 696 reads: "Each corporation, company or individual, doing business in this State as a bond investment company, or company to place or sell bonds, certificates or debentures on the partial payment or installment plan, shall deposit with the State Treasurer, in cash or securities approved by said Treasurer, the sum of five thousand dollars, and shall deposit semi-annually with said Treasurer, in cash or secruities, to be approved by said officer, ten per cent of all net premiums received until the sum deposited amounts to one hundred thousand dollars. (Acts 1897, p. 118; Gammel L., vol. 10, p. 1172.)"

Article 697 reads: "If any such domestic corporation, shall fail, for sixty days after its organization, to make with the State Treasurer the deposit required by this title, it shall be considered to have forfeited its charter; and the Attorney General shall upon information thereof, bring suit in the name of the State to have such charter or certificate of incorporation declared forfeited, and the court, upon so findings, shall declare such charter forfeited and appoint a receiver for such company, whose duty it shall be, under the order of the court, to distribute to the shareholders the assets of the company. The court shall out of such assets make equitable compensation for the receiver."

Article 698 reads: "In case of the failure of any such company, the district court of the county in which the principal office is located, upon the application of one or more shareholders, shall appoint a receiver for such company, whose duty it shall be to wind up its affairs, liquidate its debts, and distribute its assets, using therefor, upon the order of the court, the deposit previously made with the State Treasurer to secure the shareholders. Said Treasurer is authorized to pay out such deposit upon the warrant of the Comptroller in accordance with requisitions made upon the Comptroller by said receiver, approved by the court."

Article 699 provides how the interchange of deposit may be made.

Article 700 reads: "If any such company shall cease to do business in this State and satisfy the Comptroller and the Attorney General that it has no liabilities in this State, the Comptroller shall issue his warrant to the State Treasurer; and said Treasurer upon such warrant of the Comptroller, shall return to such company the cash or securities deposited by it under the provisions of this title."

The Legislature in the enactment of the foregoing articles had the following main objects in view:

(1)  To require each corporation doing business in this State as a bond investment company to place cash or certain securities with the State Treasurer, in the sum of $5,000, as a deposit; and to deposit semi-annually ten per cent. of all net profits received, until the sum of $100,000 is deposited.

(2)  To require the Attorney General, in the event any such corporation shall fail to make such deposit as required, to bring suit to have the charter of such company declared forfeited, and to have a receiver appointed for such company, whose duty it shall be, under the orders of the court, to distribute to the shareholders the assets of the company.

(3)  To provide, in case of the failure of any such company, that upon application of one or more shareholders the district court shall appoint a receiver for such company, whose duty it shall be to wind up its affairs, liquidate its debts, and distribute its assets, using therefor, upon the order of the court, the deposit previously made with the State Treasurer.

(4)  To permit the interchange of the deposit.

(5)  To provide, in the event any such company shall cease to do business in this State and shall satisfy the Comptroller and the Attorney General that it has no liabilities in this State, that the Comptroller shall issue his warrant to the State Treasurer, and said Treasurer upon such warrant shall return to such company the cash or securities deposited by it under the provisions of law.

It is undisputed that relator is a foreign corporation, and that it does not now transact, nor has it for several years transacted, any business in this State, and that it has discharged all of its liabilities to all parties to whom it sold its bonds, certificates, and debentures, and that there is now no indebtedness of any kind or character due by relator to any holder of such securities.

It is futher agreed that there are now owned and held by residents of this State shares of said corporation's capital stock. The question of its solvency is not challenged. Therefore the basis of such refusal to return to relator the deposit rests upon the sole fact that some shareholders of its capital stock reside in this State.

It will be noted that Article 696 describes how the deposit shall be made. Articles 697 and 698 provide for the appointment of a receiver in the event such company fails to make such a deposit, or in the event of the failure of such a company. No occasion has arisen for the appointment of a receiver to wind up the affairs of this company. It is undisputed that this com-

pany made the deposit as required by law, and it is also undisputed that it owes no liabilities and that it has paid its debts. If the question of the solvency of the company were presented, or if it had failed to comply with the provisions of the law, or if a receiver had been appointed, then Articles 697 and 698 would apply; but under the statement of facts presented here no such questions are raised, and the two articles just mentioned do not control. Under the facts of this case, Article 700 controls.

There is nothing in Article 700 which requires that the deposit made by this company be retained for the benefit of its shareholders. That article plainly provides that, in the event any such company shall cease to do business in this State, and shall show that it has no liabilities in this State, a warrant shall be drawn as provided by said article, and the securities or cash deposited by such company shall be returned to it. The Legislature did not see fit to express in such article that when such a company ceases to do business in this State, and shows that it has no liabilities in this State, its deposit shall be retained for the benefit of its shareholders. In the absence of such an intention expressed in the statute, this Court would not be justified in writing into it such an intention by judicial construction. Since this company is no longer doing business in this State, and is not availing itself of the protection of the laws of this State, the statute authorizes it to withdraw its deposit, provided it has no liabiliies in the State.

It is the duty of courts in construing a statute to carry out the intention of the Legislature as expressed therein. An analysis of this act does not convince us that the Legislature intended that the deposit should be retained by the State Treasurer for the benefit of the shareholders in a case like the one before us. Suppose the company had deposited $100,000 under the provisions of this law, and then ceased to act in this State. Would it be inferred from the language used in the articles under consideration that the Legislature intended, in the event the company had one or more shareholders in this State, that the deposit must remain with the State Treasurer so long as any of the company's stock should be owned by a resident of the State? We hardly think so.

Chief Justice GAINES, in construing Article 700, in Morrell v. Colonial Security Co., 101 Texas 309, 107 S. W. 525, used the following language regarding the Security Company: "Having ceased to act in the state, the state was no longer morally responsible for its solvency. It was therefore permitted to withdraw, and to take with it its assets." So far as this record shows,

the Bankers Union Life Company of Denver, Colorado, is a going concern, and no rights of the shareholders are jeopardized. Therefore the deposit made by it need not be retained to protect their interests.

The writ as prayed for by relator will be granted; and it is ordered that George H. Sheppard, the Comptroller of the State of Texas be directed to issue his warrant to the Treasurer of the State of Texas, directing the return to the relator of the $5,000 in securities held by the said respondent Charley Lockhart, Treasurer of the State of Texas.

Opinion delivered June 15, 1938.